UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**WILLIAM J. LEBERMAN, as Chapter 7 Trustee of the Bankruptcy Estate of Syroco, Inc.,**

                              **Plaintiff,**

                            -v-                              5:10-CV-1090 (NAM)
                                                                       (Adversary Proceeding 09-50039)

**U.S. XPRESS ENTERPRISES, INC., INTEGRATED LOGISTICS CORPORATION, INTEGRATED LOGISTICS, LLC, INTEGRATED LOGISTICS ACQUISITIONS, LLC, and INTEGRATED LOGISTICS,**

                              **Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

BOND, SCHOENECK & KING, PLLC
Louis Orbach, Esq., of counsel
Suzanne M. Messer, Esq., of counsel
One Lincoln Center
Syracuse, New York 13202-1355
Attorneys for Plaintiff

Pinsky & Skandalis
Todd J. Pinsky, Esq., of counsel
5790 Widewaters Parkway
P.O. Box 250
Syracuse, New York 13214-0250
Attorneys for Defendant U.S. Xpress Enterprises, Inc.

Harter, Secrest & Emery, LLP
John R. Weider, Esq., of counsel
1600 Bausch & Lomb Place
Rochester, NY 14604-2711
Attorneys for Defendant Integrated Logistics Acquisitions, LLC


**Hon. Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

In this adversary proceeding, commenced on July 16, 2009, William J. Leberman, Esq. in his capacity as Chapter 7 Trustee ("plaintiff") of the Bankruptcy Estate of Syroco, Inc. ("debtor"), seeks to avoid preferential transfers in the amount of $121,859.53 made by the debtor to U.S. Xpress Enterprises, Inc. ("defendant").[1] The case was automatically referred to bankruptcy court under 28 U.S.C. § 157(a), and proceeded through discovery before United States Bankruptcy Judge Margaret Cangilos-Ruiz. By Memorandum-Decision and Order dated January 31, 2011 (Dkt. No. 10), this Court granted defendant's motion (Dkt. No. 1) to withdraw the automatic reference to bankruptcy court. The Court notified the parties that it would accept summary judgment motions.

Defendant now moves (Dkt. No. 12) for summary judgment dismissing the action. Plaintiff cross-moves to add U.S. Xpress, Inc. as a defendant and for summary judgment (Dkt. No. 15) avoiding preferential transfers in the amount of $121,859.53 and recovering that amount, plus interest, for the debtor's estate pursuant to 11 U.S.C. §§ 547(b) and 550(a).

Plaintiff's request to add U.S. Xpress Inc. as a party defendant is granted.[2] As set forth below, the Court grants summary judgment to defendant (Dkt. No. 12), denies plaintiff's motion for summary judgment (Dkt. No. 15), and dismisses the case.[3]

---

[1] The underyling Chapter 7 case is *In re Syroco, Inc.*, Bkr. Case No. 07-32419.

[2] The named defendant U.S. Xpress Enterprises, Inc. does not oppose so much of plaintiff's motion as seeks to add U.S. Xpress, Inc. as a defendant. Counsel explains that U.S. Xpress Enterprises, Inc. is the holding company of U.S. Xpress Inc., which is the proper defendant. Hereinafter all references to "defendant" in this Memorandum-Decision and Order include both U.S. Xpress Enterprises, Inc. and U.S. Xpress Inc.

[3] The Court notes that Integrated Logistics Acquisitions, LLC ("Integrated") appeared in the adversary proceeding and filed an answer alleging that neither Integrated Logistics Corporation, Integrated Logistics, LLC, Integrated Logistics Acquisitions, LLC, nor Integrated Logistics has ever transacted business directly with or received payments from the debtor. Rather, Integrated asserts that, to

**FACTS**

The material facts are undisputed. The debtor manufactures and sells resin-based plastic molded outdoor furniture products, wall decor items, plastic pipe fittings, and other plastic products. Defendant, a provider of freight shipping services, granted the debtor an open account/credit line on December 6, 2006, pursuant to a credit agreement. Defendant's first invoice to debtor is dated December 21, 2006. After each completed shipment, defendant sent a written invoice to the debtor stating the amount due for defendant's freight services, the ship date, the delivery date, and the date of the invoice. Under the parties' credit agreement, payment on each invoice was due upon receipt of the invoice and in no case later than 15 days following the date of the invoice. The 15-day payment provision was never followed or enforced. Rather, the debtor periodically sent checks covering multiple invoices.

On July 23, 2007, the debtor filed a voluntary Chapter 11 petition in Puerto Rico Bankruptcy Court. On October 3, 2007, the case was transferred to the United States Bankruptcy Court, Northern District of New York. On March 20, 2008, the Chapter 11 case was converted to a Chapter 7 case, and William J. Leberman, Esq. was appointed as Trustee. The Trustee brought this adversary action to avoid as preferential a total of $196,308.15 in payments by debtor to defendant for freight shipping and delivery services during the 90-day period prior to the debtor's bankruptcy filing. Having received evidence that defendant extended unpaid

---

the extent debtor made any transfers to it during the preference period, those transfers are not subject to avoidance because Integrated was not an "initial transferee" as defined in 11 U.S.C. § 550(a) but simply a "mere conduit" between debtor and third-party freight providers. Further, any such transfers from the debtor were not for the benefit of Integrated but rather for the benefit of the third-party freight providers, and Integrated was obligated to, and did, forward any such transfers to the third-party freight providers. Integrated did not participate in the motions in this case. In view of plaintiff's position on these motions, the Court deems the claims against Integrated in this action to be abandoned.

subsequent new value to the debtor in the sum of $74,451.62 during the preference period, plaintiff reduced the amount in issue to $121,859.53.

## APPLICABLE LAW

**Standard on summary judgment**

Summary judgment is appropriate when there is no genuine issue with regard to any material fact, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Stated otherwise, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). When deciding a summary judgment motion, the court must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

**Preferences**

Under the Bankruptcy Code, 11 U.S.C. § 547(b), a preferential transfer is one made by an insolvent debtor on account of an antecedent debt, within the last 90 days prior to debtor's bankruptcy filing, where the transfer "enable[s] a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankruptcy estate." *Union Bank v. Wolas*, 502 U.S. 151, 160-61 (1991). Section 547(b) allows a trustee to avoid a preferential tranfer.[4] Avoidance of a preferential transfer advances the policy of equality of

---

[4] Section 547 provides in part:
   \*\*\*
(b) Except as provided in subsection[] (c) ... of this section, the trustee may avoid any transfer of an interest of the debtor in property--

-4-

distribution among creditors, because any payment on account of an antecedent debt "tends to favor the payee over other creditors[.]" *Id.* at 161.

A transferee may defend against a trustee's avoidance efforts by proving that the tranfer was made in the ordinary course of business. *See* 11 U.S.C. § 547(c). The ordinary course of business exception is intended to "benefit all creditors by deterring the 'race to the courthouse' and enabling the struggling debtor to continue operating its business." *Union Bank*, 502 U.S. at 161; *accord In re Roblin Indus., Inc*., 78 F.3d 30, 40-41 (2d Cir. 1996). "The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through

---

    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made--
      (A) on or within 90 days before the date of the filing of the petition; or
      (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
    (5) that enables such creditor to receive more than such creditor would receive if–
      (A) the case were a case under chapter 7 of this title;
      (B) the transfer had not been made; and
      (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
(c) The trustee may not avoid under this section a transfer–
    \*\*\*
    (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was–
      (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
      (B) made according to ordinary business terms[.]
    \*\*\*
(g) For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

cooperation with all of his creditors." *Union Bank*, 502 U.S. at 161.

To establish the ordinary course of business defense, a transferee may prove either (1) that the transfer was "made in the ordinary course of business or financial affairs of the debtor and the transferee" or (2) that it was "made according to ordinary business terms." 11 U.S.C. § 547(c)(2)(A),(B); *see In re Globe Mfg. Corp.*, 567 F.3d 1291, 1298, n.4 (11th Cir. 2009).[5] As the Eleventh Circuit explains:

> The phrases "ordinary course of business" and "ordinary business terms" are not defined by the [Bankruptcy] Code. Courts have interpreted the "ordinary course of business" requirement to be subjective in nature insofar as it requires courts to consider whether the transfer was ordinary in relation to the "other business dealings between that creditor and that debtor." The "ordinary business terms" requirement, by contrast, is objective in nature, requiring proof that the payment is ordinary in relation to prevailing industry standards. The creditor has the burden of proof with respect to both requirements.

*Id.* at 1298 (citations omitted); *see generally In re Roblin*, 78 F.3d at 40. Late payments "are more likely to be considered outside the ordinary course of business and avoidable as preferences" than timely payments, *In re Craig Oil*, 785 F.2d 1563, 1567-68 (11th Cir. 1986); on the other hand, "a 'late' payment really isn't late if the parties have established a practice that deviates from the strict terms of their written contract." *Matter of Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1032 (7th Cir. 1993).

## DISCUSSION

It is undisputed that the debtor's payments to defendant during the 90-day "preference

---

[5] Many reported cases concern section 547(c) as it read prior to its amendment in 2005. "Prior to 2005, to establish an 'ordinary course' defense, a creditor had to show both that the transfer was made in the ordinary course and according to ordinary terms. The 2005 amendment allows a creditor to prevail by showing either that the course or the terms were ordinary." *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1298, n.4 (11th Cir. 2009) (emphasis in original).

period" (from April 15, 2007 until the bankruptcy filing on July 23, 2007) are transfers within the meaning of 11 U.S.C. § 547(b), because they were paid on account of an antecedent debt made while the debtor was insolvent, and they enabled defendant to receive more than it would have received in the Chapter 7 liquidation.[6]  The question presented on these summary judgment motions is whether defendant has proven that the payments were made in the ordinary course of business of the debtor and defendant within the meaning of 11 U.S.C. § 547(c)(2)(A), so as to be exempted from avoidance.

The Court concludes that defendant has carried its burden of proving that the payments were made in the ordinary course of business under 11 U.S.C. § 547(c)(2)(A), because they were paid in accordance with the established practice between the debtor and defendant.[7]  Defendant provided shipping and freight services for the debtor for almost four months prior to the commencement of the preference period; their conduct during this period provides a valid basis for determining the ordinary course of business between the two.  The undisputed billing and payment summaries show that, during the "base period" (the period between defendant's first invoice to debtor on December 21, 2006 and the beginning of the preference period on April 15, 2007), defendant sent the debtor a written invoice after each shipment, and debtor made periodic payments covering multiple invoices.  This practice continued during the preference period.

During the base period, defendant sent a total of 116 invoices, and the debtor wrote 11

---

[6] The Trustee's declaration establishes that the total of unsecured claims exceeds $22 million, and that, even if he were to recover the entire amount sought in the various avoidance actions, the total amount available for distribution to holders of all claims would not exceed $3.75 million.  Defendant offers no evidence to the contrary.

[7] Defendant argues in the alternative that the payments were made according to ordinary business terms in the industry.  The Court does not reach this issue.

checks.  Checks were typically written every week or two.  The payment range was 23 days to 65 days from invoice to payment.  During the base period, 59% of payments were made within 30 days of the invoice date; 39% were made between 31 to 60 days; and 2% were made after 60 days. On average, during the base period, the debtor paid defendant's invoices within 35.54 days of the invoice.

During the preference period, defendant sent a total of 171 invoices, and the debtor wrote five checks.  Checks were written approximately weekly during May 2007, and then ceased.  The payment range was 22 days to 70 days (with one exception).  During the preference period, 61% of payments were made within 30 days of the invoice date; 33% were made between 31 to 60 days; and 2% were made after 60 days.  On average, the debtor paid defendant's invoices within 31.63 days of the invoice.  During the preference period, defendant extended unpaid subsequent new value to the debtor in the sum of $74,451.62.

Plaintiff argues that the payments during the preference period were not made in the ordinary course of business, because only 36% of defendant's payments were received within 29 days of the invoice date during the base period, compared to 61% during the preference period. At first glance, this comparison suggests a significant disparity between base-period payments and preference-period payments.  The choice of the 29-day period is arbitrary, however. Choosing a 26-day period instead suggests that the debtor paid more diligently during the base period: 22% of payments were made within 26 days during the base period compared to 16% during the preference period.  Choosing a 28-day period yields an insignificant difference between base-period and preference-period payments: 45% of payments were made within 28 days during the base period, compared to 47% during the preference period.  Likewise, if a 31-

day period is chosen, the difference is insignificant: 63% of payments were made within 31 days during the base period compared to 61% during the preference period. Indeed, these comparisons confirm the Court's conclusion that defendant has proven as a matter of law, based on the undisputed billing and payment schedules, that the payments it received from the debtor during the preference period were made in the ordinary course of business under 11 U.S.C. § 547(c)(2)(A). Thus, they do not constitute avoidable preferential payments.

## CONCLUSION

It is therefore

ORDERED that defendant's motion (Dkt. No. 12) for summary judgment is granted; and it is further

ORDERED that plaintiff's cross motion (Dkt. No. 15) is granted to the extent of adding U.S. Xpress, Inc. as a defendant, and otherwise denied; and it is further

ORDERED that the case is dismissed.

IT IS SO ORDERED.

Date:   December 5, 2011

_____
Norman A. Mordue
Chief United States District Court Judge